1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  DEBORAH R. WHALEY,                )   NO. CV 10-1352 SS
                                      )
12                Plaintiff,          )
                                      )
13            v.                      )   **MEMORANDUM DECISION AND ORDER**
                                      )
14  MICHAEL J. ASTRUE,                )
    Commissioner of Social Security   )
15                                    )
                  Defendant.          )
16  _____ )

17

18                              **I.**

                          **INTRODUCTION**

19

20

21      Deborah R. Whaley ("Plaintiff") brings this action seeking to

overturn the decision of the Commissioner of the Social Security

22  Administration (hereinafter the "Commissioner" or the "Agency") denying

23  her application for Supplemental Security Income ("SSI").  The parties

24  consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the

25  undersigned United States Magistrate Judge.  For the reasons stated

26  below, the decision of the Commissioner is REVERSED and REMANDED for

27  further administrative proceedings.

28

**II.**

**PROCEDURAL HISTORY**

On January 29, 2007, Plaintiff filed an application for SSI under Title XVI of the Social Security Act. (Administrative Record ("AR") 22, 106-13). Plaintiff alleged a disability onset date of May 1, 2006 on the bases of cervical stenosis and an inability to raise her left dominant arm. (AR 123). The Agency initially denied her application on May 30, 2007. (AR 73-77). Plaintiff then requested a hearing (AR 78), which was held before Administrative Law Judge ("ALJ") Robert S. Eisman on December 11, 2008. (AR 32-68). Plaintiff appeared with counsel and testified. (AR 34-57). A vocational expert ("VE") testified at the hearing. (AR 57-67).

On December 24, 2008, the ALJ issued a decision denying benefits. (AR 22-29). On February 9, 2009, Plaintiff sought review of this decision before the Appeals Council. (AR 5). On January 14, 2010, the Appeals Council denied review. (AR 1). Plaintiff filed the instant action on March 3, 2010.

**III.**

**FACTUAL BACKGROUND**

Plaintiff asserts that her health problems began in 2005 with a pain in her back and radiating pain in her left arm. (AR 43). According to Plaintiff, her condition steadily worsened until April 2006, when it became so severe that she had no feeling in her left arm

2

and could not move it.  (Id.).  In May 2006, Plaintiff was referred to Harbor-UCLA Medical Center ("Harbor"), where she was diagnosed with "disk osteophyte complex [with] severe NF [neural foraminal] stenosis on the left [at] both C4-5 and C5-6" disc spaces.  (AR 195).  Plaintiff underwent an anterior cervical discectomy and fusion that same month, after which she reported the pain "got better" and saw some improvement in her bicep strength.  (AR 158, 192).  Nonetheless, in August 2006, Plaintiff still reported continuing pain in her back shoulder.  (Id.). Later that same year, Plaintiff began physical therapy.  (AR 190).  In December 2006, a Harbor physician noted that Plaintiff's left hand strength showed "significant improvement," but still recommended continued disability status due to Plaintiff's "nonfunctional" left upper arm.  (AR 185).  In April 2007, a Harbor physician noted that although Plaintiff "can move her fingers, her hand is weak and she cannot hold things.  Her [left] arm is so weak she cannot lift anything. [Plaintiff] has had [occupational therapy] for exercises but has not had improvement in function.  She is very depressed . . . ."  (AR 178).

In May 2007, consultative state orthopedist Dr. Dorsey examined Plaintiff, finding her to be a "reliable historian."  (AR 158). Dr. Dorsey reported that following surgery, Plaintiff experienced a 50% improvement.  (AR 158).  Plaintiff complained that she had no sensation in her left thumb, a lesser degree of numbness in the other fingers on her left hand, and sharp pain at night that would wake her up, which she would attempt to treat by massaging her hand.  (Id.).  Dr. Dorsey noted that there was no evidence of paravertebral spasm in Plaintiff's cervical spine and that the range of motion of the cervical spine was

3

grossly normal.  (AR 159).  Plaintiff's lumbar spine showed no evidence of splinting or spasm, and again, the range of motion was grossly normal.  (Id.).  Dr. Dorsey reported that Plaintiff's left hand showed decreased sensation to all fingers, but no significant swelling or tenderness, and had the full range of normal motion.  (Id.).  Additionally, Plaintiff had a grossly normal range of motion in her shoulders, elbows, wrists, hips, knees and ankles, and her gait was normal.  (AR 159-60).

In his radiographic examination, Dr. Dorsey noted that Plaintiff's C4-C5 disc space was "markedly decreased" and the C5-C6 disc space was moderately decreased.  (AR 160).  However, Dr. Dorsey found that all of Plaintiff's vertebral heights were within normal limits, and all of the remaining intervertebral disc spaces were normal, with no evidence of osteophyte formation or soft tissue swelling, fracture, or dislocation.  (AR 160).  Dr. Dorsey determined that Plaintiff had a "poor clinical result" from her May 2006 operation and suffered from carpal tunnel syndrome in her left hand.  (Id.).

Dr. Dorsey concluded, based on his examination and review of the medical records, that Plaintiff could push, pull, lift and carry twenty pounds occasionally and ten pounds frequently, and that she should be able to stand six hours out of an eight-hour day.  (AR 161).  Dr. Dorsey further determined that Plaintiff could bend and stoop occasionally, finger frequently, and grip and grasp on a frequent, but not continuous, basis.  According to Dr. Dorsey, Plaintiff could occasionally engage in

4

1  feeling activities with her left upper extremity, but could not do any
2  overhead activities with the left upper extremity.  (Id.).

3

4      On May 24, 2007, Dr. P.V. Matsuura, a non-examining physician,
5  completed a Physical Residual Functional Capacity Assessment.  (AR 163-
6  69).  Dr. Matsuura referred to Dr. Dorsey's report and reached the same
7  conclusions regarding Plaintiff's physical abilities and limitations.
8  (AR 163-65, 169).

9

10     On June 17, 2008, Dr. Mariam Kazemzadeh, who had treated Plaintiff
11 on several occasions at Harbor (see, e.g., AR 227-28, 235, 238),
12 completed a Physical Residual Functional Capacity Questionnaire
13 concerning Plaintiff.  (AR 353-56).  Dr. Kazemzadeh diagnosed Plaintiff
14 with C5-C6 paralysis and, referring to a colleague's evaluation,
15 determined that Plaintiff was "permanently, totally disabled."  (AR
16 353).  According to Dr. Kazemzadeh, Plaintiff's MRI revealed that
17 "[r]esolution of the prior disc protrusion at C4-C5 multilevel disc
18 osteophyte complex [was] causing mild left neural foraminal stenosis
19 [at] several levels."  (AR 353).  Dr. Kazemzadeh determined that
20 Plaintiff could not lift or carry weight with her left arm, and that she
21 had limitations in reaching, handling and fingering with the same arm.
22 (AR 355).  While Dr. Kazemzadeh stated that Plaintiff could climb
23 ladders only rarely, she also reported that Plaintiff could twist,
24 stoop, bend, crouch and climb stairs frequently.  (AI 355).
25 Dr. Kazemzadeh concluded that Plaintiff would likely miss four or more
26 work days per month due to her condition.  (AR 356).

27

28

In October 2008, Plaintiff began therapy with Rio Hondo Mental Health ("Rio Hondo") to address her depression. (AR 331-37). As reflected in her Rio Hondo initial assessment report, Plaintiff reported that she felt hopeless and depressed; experienced crying spells, mood swings, and racing thoughts; and had difficulty sleeping and suicidal thoughts. (AR 331). Plaintiff was prescribed the antipsychotic Seroquel (AR 50, 327, 329) and the antidepressant Remeron. (AR 328). At the December 11, 2008 hearing, Plaintiff reported that she went to therapy at Rio Hondo every "couple of weeks."[1] (AR 48).

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in

---

[1] At the hearing, Plaintiff testified that in addition to depression, she also currently experienced pain in her back, left shoulder, left arm, and neck and numbness in her left arm and hand. (AR 44-48).

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262

7

F.3d at 953-54.  If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's Residual Functional Capacity ("RFC")[3], age, education and work experience.  <u>Tackett</u>, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded at step five that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 22).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 29, 2007.  (AR 24).  At step two, he found that Plaintiff had the following severe impairments:  neck/cervical pain disorder, left trapezial area pain disorder, left thumb numbness and numbness in

---

[3] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

fingers of the left hand. (Id.). He also found that Plaintiff suffered from the non-severe but medically determinable condition of depression. (Id.). At step three, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment.  (AR 25).

At step four, the ALJ found that Plaintiff was not capable of performing any past relevant work.  (AR 28).   In making that determination, the ALJ expressly rejected testimony by the VE that Plaintiff could perform her past relevant work as a manicurist and telephone solicitor. (Id.).  Based on his review of the record, the ALJ concluded that the Plaintiff had the RFC to perform "light work" in that she could "occasionally lift up to 20 pounds; frequently lift up to 10 pounds, stand or walk for approximately 6 hours per 8-hour workday, with normal breaks; and sit for approximately 2 hours per 8-hour workday, with normal breaks." (AR 25).  Additionally, the ALJ found that with her left upper extremity, Plaintiff could occasionally push-pull up to 20 pounds, frequently push-pull up to 10 pounds, occasionally reach and lift, and frequently handle objects (gross manipulation), but only to the extent these activities did not require movement over shoulder height.  (Id.).   The ALJ determined that Plaintiff was precluded from climbing ladders, ropes or scaffolds; that she could frequently climb ramps or stairs and frequently stoop, kneel, crouch and crawl; and that she could frequently finger objects (fine manipulation) and feel with the left hand.  (Id.).  Finally, the ALJ also found that Plaintiff "must avoid concentrated exposure to extreme cold and all exposure to extreme vibration and machinery operation involving use of the left upper extremity." (Id.).  In reaching these conclusions, the ALJ relied strongly on the report of consultative

1  examining orthopedist Dr. Thomas R. Dorsey.  (AR 26-27, 158-61).  The
2  ALJ  also  addressed  the  Physical  Residual  Functional  Capacity
3  Questionnaire submitted by treating physician Dr. Mariam Kazemzadeh, but
4  specifically gave no weight to Dr. Kazemzadeh's "assessment of projected
5  days absent per month as it is subjective and unsupported by the medical
6  evidence."  (AR 27, 353-56).

7

8      At step five, the ALJ found that there were jobs existing in
9  significant  numbers  in  the  national  economy  that  Plaintiff  could
10 perform.  (AR 28-29).  Specifically, the ALJ concluded that Plaintiff
11 could  perform  the  job  requirements  of  stuffer  (Dictionary  of
12 Occupational Titles ("DOT") 731.685-014) and polisher (DOT 713.687-034).
13 (AR 29).  Thus, the ALJ concluded that Plaintiff was not disabled.  (AR
14 29).

15

16                              **VI.**

17                      **STANDARD OF REVIEW**

18

19      Under  42  U.S.C.  §  405(g),  a  district  court  may  review  the
20 Commissioner's decision to deny benefits.  The court may set aside the
21 Commissioner's decision when the ALJ's findings are based on legal error
22 or are not supported by substantial evidence in the record as a whole.
23 Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.
24 Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

25

26      "Substantial evidence is more than a scintilla, but less than a
27 preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence
28 which  a  reasonable  person  might  accept  as  adequate  to  support  a

                              10

1   conclusion." <u>Id.</u>   To determine whether substantial evidence supports
2   a finding, the court must "'consider the record as a whole, weighing
3   both evidence that supports and evidence that detracts from the
4   [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny</u>
5   <u>v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).   If the evidence can
6   reasonably support either affirming or reversing that conclusion, the
7   court may not substitute its judgment for that of the Commissioner.
8   <u>Reddick</u>, 157 F.3d at 720-21.

9

10                                   **VII.**

11                             **DISCUSSION**

12

13      Plaintiff contends the ALJ erred for three reasons: (1) the ALJ
14   should have applied a favorable grid rule at step five after the VE
15   determined Plaintiff's range of work, (Complaint Memo. at 5-7); (2) the
16   ALJ improperly relied on the VE's identification of other work Plaintiff
17   could do because the DOT descriptions of those positions deviated from
18   the hypotheticals posed to the VE, (<u>id.</u> at 8-9); and (3) the ALJ
19   improperly rejected the opinion of Plaintiff's treating physician
20   without providing legitimate reasons. (<u>Id.</u> at 9-11).   For the reasons
21   discussed below, the Court agrees that the deviation between the VE's
22   testimony and the DOT descriptions of other work the VE determined
23   Plaintiff could perform created an unresolved inconsistency in the
24   evidence that requires remand for further administration proceedings.
25   The Court rejects, however, Plaintiff's remaining claims.
26   //
27   //
28   //

                                   11

**A.** **The ALJ Failed To Explain Deviations From The DOT In The VE's Testimony And Failed To Elicit Testimony From The VE Regarding the Deviation**

Plaintiff contends that the ALJ improperly relied on testimony by the VE that she is capable of performing sedentary work as a stuffer or polisher and light work as a parking lot booth attendant because the testimony is inconsistent with certain job requirements for those positions as described in the DOT. (Complaint Memo. at 8-9). Specifically, Plaintiff argues that according to the DOT, these positions require the ability to reach, handle and finger at levels in excess of the limitations posed in the ALJ's hypotheticals and the ALJ improperly failed to acknowledge or explain these deviations. (Id.). The Court agrees.

Social Security regulations provide that DOT classifications are rebuttable by recognizing "vocational experts and several published sources other than the DOT as authoritative." Johnson v. Shalala, 60 F.3d 1428, 1435-36 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1566(d)(2)-(5), (e) (the use of vocational experts is particularly important where "the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue"). Although evidence provided by a VE is generally expected to be consistent with the DOT, "[n]either the DOT nor the VE evidence automatically 'trumps' when there is a conflict." Social

12

Security Ruling ("SSR") 00-4p;[4] <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir. 2007).  The ALJ may rely on expert testimony that contradicts the DOT if the record contains persuasive evidence to support the deviation.  <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1042 (9th Cir. 2008).  Furthermore, the ALJ should explain the deviation.  <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001).  Evidence sufficient to permit deviation may be "either specific findings of fact regarding claimant's residual functionality, or inferences drawn from the context of the expert's testimony."  <u>Light v. Social Sec. Admin.</u>, 119 F.3d 789, 793 (9th Cir. 1997) (internal citations omitted).

The ALJ determined that Plaintiff was capable of performing "light work" as defined in 20 C.F.R. § 416.967(b).[5]  (AR 25).  However, the ALJ also recognized that Plaintiff's impairments, including an inability to lift, reach, push and pull above shoulder height with her left upper

---

[4] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989).

[5] The Guidelines classify jobs as sedentary, light, medium, heavy, or very heavy according to the level of physical exertion required.  20 C.F.R. § 416.967.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

extremity, limited her ability to perform some basic work activities and likely precluded her from being able to perform the full range of light work.  (Id.).  Therefore, the ALJ properly solicited the testimony of a VE to determine whether Plaintiff's limitations prevented her from performing her past relevant work or from obtaining other work that existed in significant numbers in the national economy.  Widmark v. Barnhart, 454 F.3d 1063, 1070 (9th Cir. 2006).

     At the hearing, the ALJ posed two hypotheticals to the VE.  In the first hypothetical, the ALJ asked the VE whether a left-hand dominant person able to perform light work with Plaintiff's age, education, work experience, skill set, and RFC, including the inability to lift, reach, push or pull above shoulder height with the left upper extremity and the ability to frequently finger objects and feel with the left upper extremity, would be able to perform Plaintiff's past relevant work.  (AR 62-63).  The VE opined that such a person would be able to work as a manicurist and a telephone solicitor.  (AR 63).  The ALJ then asked whether other jobs in the national or regional economy existed which such a person could perform.  (Id.).  The VE identified two positions:

> There would be jobs as a stuffer . . . .  That would be
> regarded as sedentary, an SVP [specific vocational
> preparation][6] of 2, with a DOT code of 731.685-014 . . . .
> There would exist polishing or polisher positions.  Again, of
> a sedentary nature, an SVP of 2, with a DOT code of 713.687-

---

[6]  SVP ratings measure the approximate length of time required to learn the skills necessary to perform a given job.  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

1    034 . . . . That would be the extent of the work available,

2    Judge.

3

4    (AR 64).

5

6      In the second hypothetical, the ALJ asked the VE to assume a person

7    of Plaintiff's age, education, work experience and skill set who is able

8    to perform light work, but who is not required to push, pull, lift, or

9    reach with the left upper extremity, and who is only occasionally

10   required to finger objects (fine manipulation) and feel with the upper

11   left extremity. (AR 64-65). The VE opined that such a person would not

12   be able to perform Plaintiff's past relevant work, but would be able to

13   work as a parking lot booth attendant. (AR 65). The VE explained that

14   the parking lot booth attendant job, DOT 915.473-010, is regarded as

15   light work with an SVP of two. (Id.).[7]

16

17     In his decision, the ALJ observed that if Plaintiff had the RFC to

18   perform the full range of light work, the grids would compel a finding

19   of not disabled.[8]   (AR 28). The ALJ rejected the VE's opinion that

20          _____

21          [7]  Plaintiff's attorney asked the VE whether a person with the
     limitations in the second hypothetical who was also projected to miss
22   four days of work per month due to pain and depression would be able to
     perform any of the jobs the VE had identified. (AR 66). The VE stated
23   that such a person would not be able to perform any jobs in the regional
     or national economy. (Id.).
24
25          [8]  Pursuant to Medical-Vocational Rule 202.10, a person limited to
     light work as a result of a severe medically determinable impairment
26   who, like Plaintiff, is closely approaching advanced age and is not a
     high school graduate but is literate and able to communicate in English,
27   and whose previous work experience is unskilled, is not disabled. 20
     C.F.R. Pt. 404, Subpt. P, App.2, § 202.10. A person between the ages
28   of fifty and fifty-four, inclusive, is considered "approaching advanced

Plaintiff would be able to perform her past relevant work as a manicurist and telephone solicitor because pursuant to her RFC, Plaintiff must "avoid all exposure to extreme vibration and machinery operation involving the left upper extremity and can occasionally reach and lift with her left upper extremity, but not over should height; and cannot handle objects (gross manipulation) over shoulder height." (Id.).  The ALJ agreed with the VE, however, that Plaintiff would be able to "perform the requirements of representative occupations such as stuffer (DOT 731.685-014, sedentary work, unskilled SVP 2), with 45,000 jobs nationally and 1,200 jobs regionally; and polisher (DOT 713.687-034, sedentary work, unskilled SVP 2), with 22,000 jobs nationally and 1,000 jobs regionally."[9]  (AR 29).  Therefore, since Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ determined that she was not disabled.  (Id.).

At the hearing, the VE testified that his opinions regarding other work Plaintiff could perform were consistent with the DOT.  (AR 67).  The ALJ did not challenge that testimony.  (Id.).  However, as Plaintiff correctly notes, the DOT description of each of the positions the VE identified appear to require abilities that exceed the limitations posed in the ALJ's hypotheticals.  For example, in response to the ALJ's

---

age."  Id. at § 200.00(g).  At the time of the hearing, Plaintiff was fifty-three years old with an eleventh-grade education, able to communicate in English, and her past relevant work was unskilled.  (AR 28, 36-37).

[9]  The ALJ did not specifically refer in the decision to the VE's finding that Plaintiff was capable of working as a parking lot booth attendant.

16

first, more expansive, hypothetical, the VE determined that Plaintiff was capable of working as a stuffer or polisher. Among other assumptions, the ALJ posited in that hypothetical that the person "could occasionally lift or reach with the left upper extremity but not over shoulder height. This person could frequently handle objects, that is gross manipulation, but not . . . over should height with the left upper extremity." (AR 63). DOT codes 713.685-014 (stuffer) and 713.687-034 (polisher), however, require frequent, not occasional, reaching, and frequent handling, without the limitation in the hypothetical precluding reaching or handling over shoulder height with the upper left extremity. (Complaint Memo. Exh. 1 at 3, Exh. 2 at 3).[10]

Similarly, in response to the ALJ's second, more restrictive, hypothetical, the VE determined that Plaintiff was capable of working as a parking lot booth attendant. Among other assumptions, the ALJ posited in that hypothetical that the person "would not be required to lift or reach with the left upper extremity, would not be required to handle objects, that is gross manipulation, with the left upper extremity. Could occasionally finger objects, that is fine manipulation, with the left upper extremity . . . ." (AR 65). Whereas this hypothetical precludes any reaching and handling with the left upper extremity, DOT code 915.473-010 for parking lot attendant requires frequent reaching and handling, and frequent, not occasional, fingering, as posited in the hypothetical. (Complaint Memo. Exh. 3 at 2).

---

[10]   Plaintiff also mentions that the DOT description for stuffer requires frequent fingering. (Complaint Memo. at 8). That requirement is consistent with the VE's testimony, however, because the ALJ's first hypothetical posited that "[t]his person can frequently finger objects with the left upper extremity . . . ." (AR 63).

In sum, according to the DOT, the positions of stuffer and polisher require frequent, not occasional, reaching, and frequent reaching and handling without limitations in the upper left extremity, and the position of parking lot booth attendant requires frequent reaching and handling, and frequent, not occasional, fingering, contrary to the hypotheticals posed by the ALJ.   When there is an apparent conflict between the testimony of the VE and the definitions contained in the DOT, the ALJ must ask the VE to explain the deviation.  Massachi, 486 F.3d at 1153 (citing Social Security Ruling 00-4p).

Here, notwithstanding the apparent conflicts, the ALJ did not ask for an explanation from the VE.   Consequently, the ALJ's written determination provides no explanation as to how to resolve the conflict created by the vocational expert's identification of potential occupations which the DOT indicates require abilities beyond those posited in the hypotheticals.  As a result, the Court cannot accept the ALJ's determination which relies on the vocational expert's testimony that there are positions in the national economy available to Plaintiff. Without more, the Court cannot determine whether substantial evidence supports the ALJ's decision.

It is within the Court's discretion to decide whether to reverse and remand for further administrative proceedings or to reverse and award benefits.  McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).   Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully.  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).   In the instant case, remand is appropriate.  The ALJ erred relying on the

18

VE's testimony without further explaining how any discrepancies could be resolved.  On remand, the ALJ must determine whether Plaintiff can actually perform the requirements of the positions identified given the limitations imposed by her left upper extremity, or must elicit further testimony from a VE on this topic, or must otherwise re-evaluate his decision.

**B.**     **Assuming That Plaintiff Can Perform Other Work, The ALJ Properly Determined That Plaintiff Can Perform Other Work Existing In Significant Numbers In The National Economy And Was Not Compelled To Apply A Favorable Grid Rule**

Plaintiff contends that the ALJ failed to properly apply a favorable grid rule at step five after determining Plaintiff's range of work.  (Complaint Memo. at 5-7).  Assuming that on remand the ALJ finds that Plaintiff can perform other work as identified by the VE, the Court disagrees.

Where, as here, a claimant carries his burden of establishing he is unable to perform his past relevant work, the ALJ bears the burden of establishing that the claimant can adjust to other work.  Widmark, 454 F.3d at 1069.  The ALJ can satisfy this burden by taking the testimony of a vocational expert or by using the Medical-Vocational Guidelines.  Id.  However, the ALJ may rely on the Guidelines alone "only when the [Guidelines] accurately and completely describe the claimant's abilities and limitations."  Id. (quoting Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985)); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200.00(a), (e).  When a claimant's RFC does not coincide

19

exactly with the "full range" of work in a Medical-Vocational Rule, the ALJ may not rely solely on the Guidelines and must obtain the testimony of a VE.  <u>Widmark</u>, 454 F.3d at 1070.

The gravamen of Plaintiff's argument is that because the ALJ relied on the VE's finding that Plaintiff was capable of performing other work as a stuffer or polisher, both classified as sedentary jobs, her limited capacity for light work was irrelevant and she should be considered capable of performing only sedentary work for purposes of determining whether she is capable of performing other work at step five. (Complaint Memo. at 7).  According to Medical-Vocational Rule 201.09, a person limited to sedentary work as a result of a severe medically determinable impairment who, like Plaintiff, is closely approaching advanced age, is not a high school graduate and whose previous work experience is unskilled, is presumptively disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.09.  Therefore, Plaintiff argues, the ALJ erred in not finding her disabled because "[a]pplication of the favorable grid rule is mandatory upon identification of the range of work available." (Complaint Memo. at 7, citing SSR 83-5a).

In support of her argument, Plaintiff relies on <u>Distasio v. Shalala</u>, 47 F.3d 348 (9th Cir. 1995), and <u>Cooper v. Sullivan</u>, 880 F.2d 1152 (9th Cir. 1989).  (AR 7).  Those cases, however, are inapposite to the facts presented here, assuming that on remand the VE adequately explains the deviations between his testimony and the DOT.  In both <u>Distasio</u> and <u>Cooper</u>, the VE's testimony clearly defined the range of work the claimant was capable of performing so that it neatly fell into a specific exertional level and the ALJ adopted the VE's findings

20

without qualification.  See Distasio, 47 F.3d at 349;[11] Cooper, 880 F.2d at 1155, 1157.[12]  In such a situation, the Ninth Circuit held that the ALJ must apply the Grids by factoring in the claimant's age, education, and previous work experience to the rule applicable to the exertional level found by the VE and accepted by the ALJ.  See Distasio, 47 F.3d at 350 ("Because the Secretary failed to produce evidence that any job categorized as light work was available to Distasio, but only produced evidence of sedentary work available to him, the use of grid rule 202.14 [applicable to light work] was not based on substantial evidence."); Cooper, 880 F.2d at 1157 (holding that once the testimony of a VE establishes the work a claimant is able to perform, the ALJ is bound by the favorable results dictated by the Grids).

Here, by contrast, the VE did not find that Plaintiff was limited to only sedentary work.  In fact, the VE did not specifically address

---

[11]   In Distasio, the VE testified the claimant was limited to sedentary work.  Distasio, 47 F.3d at 349.  Even assuming Distasio was capable of performing the full range of sedentary work, because Distasio was closely approaching advanced age, had a high school education, and had no transferable job skills, the grids compelled a finding of disabled.  Id.; see also 20 C.F.R. Pt. 404, Subpt. P, App.2, Rule 201.14.

[12]   In Cooper, the VE testified the claimant was limited to sedentary and light work.  Cooper, 880 F.2d at 1157.  Even assuming Cooper was capable of performing the full range of sedentary and light work, because Cooper was currently of advanced age, had a high school diploma and was an unskilled worker, the grids compelled a finding of disabled for the portion of her claim covering the period in which she was of advanced age.  Cooper, 880 F.2d at 1157; see also 20 C.F.R. Pt. 404, Subpt. P, App.2, Rule 201.04.  The Cooper court remanded the case for further administrative hearings to determine whether the claimant was actually capable of performing the full range of light work for the portion of her claim that covered the period when she was closely approaching advanced age.  Cooper, 880 F.2d at 1158.

whether Plaintiff was capable of performing the full range of work at any specific exertional level.  In response to the ALJ's first, more expansive hypothetical, which assumed the person would be able to lift, reach, push or pull with the left upper extremity, but not above shoulder height, and would be able to frequently finger objects and feel with the left upper extremity, the VE identified two positions such a person would be capable of performing:  stuffer and polisher, both classified as sedentary.  (AR 64; Complaint Memo. Exh. 1 at 1 & Exh. 2 at 1).  In response to the ALJ's second, more restrictive hypothetical, which assumed the person would be unable to do <u>any</u> lifting, reaching, pushing, or pulling with the left upper extremity and would only be able to <u>occasionally</u> finger objects and feel with the left upper extremity, the VE testified that such a person would be able to work as a parking lot booth attendant, a position classified as light work.  (AR 64-65; Complaint Memo. Exh. 3 at 1).  While the VE's testimony deviated from the DOT and these deviations must be addressed on remand, as discussed in Part VII.A. above, it is clear that the VE did not believe that Plaintiff was limited solely to sedentary work.

     Furthermore, reliance on the Grids is inappropriate where, as here, a person's limitations, both exertional and non-exertional, fall between two rules.  <u>See</u> <u>Moore</u>, 216 F.3d at 869.  In instances where "the grids do not completely describe the claimant's abilities and limitations," the Ninth Circuit has ruled that "the grids are inapplicable and the ALJ must take the testimony of a VE."  <u>Id.</u>  Additionally, SSR 83-12 provides that when a claimant's "exertional level falls between two rules which direct opposite conclusions, <u>i.e.</u>, 'Not disabled' at the higher exertional level and 'Disabled' at the lower exertional level," and the

claimant's limitations place her somewhere "in the middle" between those two rules, it is advisable to seek the assistance of a VE.   SSR 83-12(2)(c).   The ALJ properly solicited the testimony of a VE who identified both sedentary and light work that Plaintiff could perform in lieu of relying on the Grids.   See Moore, 216 F.3d at 870. Accordingly, this claim fails.

## C.   The ALJ's Reasons For Giving The Treating Physician's Opinions Less Than Full Weight Were Proper

Plaintiff claims that the ALJ failed to properly consider the treating physician's findings. (Complaint Memo. at 9-11).   The Court disagrees.

The Ninth Circuit distinguishes among three types of physicians: (1) treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine nor treat). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).   An opinion of a treating physician is generally given more weight than the opinion of a non-treating physician.   Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). Consultative physicians are non-treating sources. Implementing regulations define a "non-treating source" to mean "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902.   This term "includes an acceptable medical source who is a consultative examiner

for [the Agency], when the consultative examiner is not [the claimant's] treating source." Id.

Although the ALJ is not required to discuss every piece of evidence in the record, the ALJ may not ignore evidence that is significant or probative. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). The rejection of probative or significant evidence must be explained. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). At the same time, the ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (the ALJ properly rejected doctor's opinions because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). Furthermore, to the extent that there is a conflict between medical opinions, it is solely the province of the ALJ to resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The Court must uphold the ALJ's decision when the evidence is susceptible to more than one rational interpretation. Magallanes, 881 F.2d at 750.

Here, the ALJ gave "substantial weight" to the report of Dr. Dorsey, a consultative examining orthopedist, and "less than full weight" to the Physical Residual Functional Capacity Questionnaire completed by Plaintiff's treating physician, Dr. Kazemzadeh. (AR 27). The reasons given by the ALJ were that Dr. Dorsey was a Board certified specialist who relied on clinical data and diagnostic findings made

24

during the course of his orthopedic consultation with Plaintiff, while Dr. Kazemzadeh, a family practitioner, merely submitted a check-off box questionnaire without any detailed analysis. (AR 27, 356). The ALJ specifically gave no weight to Dr. Kazemzadeh's projection regarding the number of days Plaintiff could be expected to be absent per month because it was "subjective and unsupported by medical evidence." (AR 27). In concluding that Plaintiff was capable of light work with some additional limitations, Dr. Dorsey relied on objective medical evidence from his physical examination of Plaintiff and a radiographic examination. (AR 159-61). The ALJ found Dr. Dorsey's conclusions to be consistent with Plaintiff's physical therapy and magnetic resonance imaging records. (AR 26-27). In contrast, the ALJ found the questionnaire submitted by Dr. Kazemzadeh lacked sufficient detail and included legal conclusions properly left to the Commissioner. (AR 27). The ALJ gave "specific" and "legitimate" reasons that are supported by substantial evidence in the record, and are therefore legally sufficient to support giving Dr. Dorsey's report greater weight than Dr. Kazemzadeh's questionnaire response. Andrews, 53 F.3d at 1043. Accordingly, this claim fails.

\\
\\
\\
\\
\\
\\
\\
\\
\\

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.   IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 3, 2010.

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

26